UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| ROYAL PARK INVESTMENTS SA/NV, Individually and on Behalf of All Others Similarly Situated, | : | Civil Action No. |
|  | : | |
|  | : | __CLASS ACTION__ |
|  | : | |
| Plaintiff, | : | COMPLAINT FOR BREACH OF |
|  | : | CONTRACT, UNJUST ENRICHMENT, |
| vs. | : | CONVERSION, BREACH OF TRUST, |
|  | : | EQUITABLE ACCOUNTING AND FOR |
| U.S. BANK NATIONAL ASSOCIATION, as Trustee, | : | DECLARATORY AND INJUNCTIVE |
|  | : | RELIEF |
|  | : | |
| Defendant. | : | |
|  | : | __DEMAND FOR JURY TRIAL__ |

Plaintiff Royal Park Investments SA/NV ("plaintiff" or "RPI") alleges the following on information and belief based upon the investigation of plaintiff's counsel (except as to the allegations pertaining to plaintiff, which are based on personal knowledge), which included an investigation and review of information concerning defendant U.S. Bank National Association ("U.S. Bank" or "defendant"), a review and analysis of information concerning the Covered Trusts (as defined below) and the documents governing U.S. Bank's duties and rights ("Governing Agreements") at issue herein.  Plaintiff and plaintiff's counsel believe that additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## SUMMARY OF THE ACTION

1.      Plaintiff brings this action on its own behalf and on behalf of a Class (as defined below) of residential mortgage-backed securities ("RMBS") investors in the following 21 substantially similar RMBS trusts for which defendant U.S. Bank serves as trustee (collectively, the "Covered Trusts"):

| | COVERED TRUST NAME | HEREINAFTER REFERRED TO AS |
|---|---|---|
| 1. | Banc of America Funding 2007-C Trust | BAFC 2007-C |
| 2. | BNC Mortgage Loan Trust 2007-2 | BNCMT 2007-2 |
| 3. | Bear Stearns Asset Backed Securities I Trust 2006-AC2 | BSABS 2006-AC2 |
| 4. | Bear Stearns Asset Backed Securities I Trust 2006-AC5 | BSABS 2006-AC5 |
| 5. | GreenPoint Mortgage Funding Trust 2007-AR1 | GPMF 2007-AR1 |
| 6. | GreenPoint Mortgage Funding Trust 2007-AR2 | GPMF 2007-AR2 |
| 7. | GreenPoint Mortgage Funding Trust 2007-AR3 | GPMF 2007-AR3 |
| 8. | Home Equity Asset Trust 2006-5 | HEAT 2006-5 |
| 9. | Home Equity Asset Trust 2006-6 | HEAT 2006-6 |
| 10. | Lehman XS Trust 2006-10N | LXS 2006-10N |
| 11. | Lehman XS Trust 2006-15 | LXS 2006-15 |
| 12. | Lehman XS Trust 2007-7N | LXS 2007-7N |
| 13. | MASTR Asset Backed Securities Trust 2006-HE2 | MABS 2006-HE2 |
| 14. | Merrill Lynch Mortgage Investors Trust 2006-WMC2 | MLMI 2006-WMC2 |

| | COVERED TRUST NAME | HEREINAFTER REFERRED TO AS |
|---|---|---|
| 15. | Structured Adjustable Rate Mortgage Loan Trust 2006-9 | SARM 2006-9 |
| 16. | Structured Asset Securities Corporation Mortgage Loan Trust 2006-NC1 | SASC 2006-NC1 |
| 17. | Structured Asset Securities Corporation Mortgage Loan Trust 2006-WF2 | SASC 2006-WF2 |
| 18. | Structured Asset Securities Corporation Mortgage Loan Trust 2006-WF3 | SASC 2006-WF3 |
| 19. | Structured Asset Securities Corporation Mortgage Loan Trust 2007-EQ1 | SASC 2007-EQ1 |
| 20. | Structured Asset Securities Corporation Mortgage Loan Trust 2007-WF1 | SASC 2007-WF1 |
| 21. | WaMu Mortgage Pass-Through Certificates Series 2007-OA2 Trust | WAMU 2007-OA2 |

2.     This dispute arises from another litigation in this district between RPI and U.S. Bank, *Royal Park Inv. SA/NV v. U.S. Bank Nat'l Ass'n*, No. 1:14-cv-02590-VM (S.D.N.Y.) (the "Litigation"), pending before the Honorable Victor Marrero.  In the Litigation, U.S. Bank has been reimbursing its legal fees and costs incurred in its defense directly from the Covered Trusts for eighteen of the Covered Trusts.  As a result, U.S. Bank's legal expenses related to defending itself in the Litigation against allegations that it breached its contractual and common law duties owed to investors are currently being paid by funds out of the Covered Trusts' assets that belong to the investors in those trusts.

3.     Under both the Governing Agreements and the common law of trusts, U.S. Bank is not permitted to receive advancement, reimbursement or indemnification for the legal fees and costs it incurs in relation to the Litigation.  Rather, U.S. Bank is improperly and illegally financing its defense of the Litigation with funds from the very investors that have accused U.S. Bank of wrongdoing.  Thus, the investors are being harmed by U.S. Bank twice – first through U.S. Bank's

- 2 -

misconduct as alleged in the Litigation, and again through U.S. Bank's improper and illegal use of those same investors' funds to defend its misconduct.

4.      Because U.S. Bank is improperly and illegally using the Covered Trusts' funds to defend itself in the Litigation, U.S. Bank must pay back to plaintiff and the Class immediately all funds it has wrongfully taken.  In addition, plaintiff and the Class request that U.S. Bank be enjoined from improperly taking such funds from all 21 trusts in the future.[1]

## JURISDICTION AND VENUE

5.      This Court has diversity jurisdiction pursuant to 28 U.S.C. §1332(a).  The amount at controversy is significantly higher than $75,000.

6.      Venue is proper in this District pursuant to 28 U.S.C. §1391(b).  Indeed, in the PSAs for the BAFC 2007-C and MABS 2006-HE2 Covered Trusts, U.S. Bank expressly consented to litigating claims arising out of such PSAs in this District.

## PARTIES

7.      Plaintiff RPI is a limited liability company incorporated under the laws of Belgium, with its principal place of business in Brussels, Belgium.  RPI acquired RMBS in each of the Covered Trusts on or about the dates indicated below, and has continuously held such RMBS since then:

---

[1]      The Governing Agreements for the HEAT 2006-5, HEAT 2006-6 and WAMU 2007-OA2 trusts expressly permit U.S. Bank to seek indemnification from either the Depositor (HEAT 2006-5, HEAT 2006-6) or the Servicer (WAMU 2007-OA2) of the respective trusts.  *See* Ex. A.  Concerning the HEAT 2006-5 and HEAT 2006-6 deals, the Governing Agreements are clear that U.S. Bank may not pursue any other sources of indemnification, including indemnification from the Covered Trust itself; the Pooling and Servicing Agreement ("PSA") for the WAMU 2007-OA2 trust, however, is silent as to whether U.S. Bank may pursue indemnification from the trust fund in the event the Servicer will not provide indemnification for its legal expenses.  *Id.* Further discovery will demonstrate whether U.S. Bank has made efforts to improperly and illegally obtain indemnification for the Litigation from these Covered Trusts.

- 3 -

| COVERED TRUSTS | TRANCHE/CLASS | INITIAL FACE AMOUNT OF CERTIFICATE | DATE ACQUIRED |
|---|---|---|---|
| BAFC 2007-C | M4 | $ 3,216,000 | May 6, 2010 |
|  | M5 | $ 3,216,000 | May 6, 2010 |
| BNCMT 2007-2 | M4 | $ 4,000,000 | May 12, 2009 |
| BSABS 2006-AC2 | 1M3 | $ 2,944,000 | May 6, 2010 |
| BSABS 2006-AC5 | M1 | $ 6,891,000 | June 23, 2010 |
| GPMF 2007-AR1 | 3A4 | $ 20,042,000 | May 12, 2009 |
| GPMF 2007-AR2 | 2A3 | $ 30,000,000 | May 12, 2009 |
|  | 2M2 | $ 11,614,000 | May 12, 2009 |
| GPMF 2007-AR3 | A3 | $ 45,914,000 | May 12, 2009 |
|  | M1 | $ 10,991,000 | May 12, 2009 |
|  | M2 | $ 7,993,000 | May 12, 2009 |
| HEAT 2006-5 | M2 | $ 5,000,000 | February 12, 2010 |
| HEAT 2006-6 | M1 | $ 5,500,000 | June 23, 2010 |
| LXS 2006-10N | 1A4B | $ 2,147,000 | February 12, 2010 |
| LXS 2006-15 | A5 | $ 30,000,000 | May 12, 2009 |
| LXS 2007-7N | 1A3 | $ 39,000,000 | May 12, 2009 |
|  | M1 | $ 39,583,000 | May 12, 2009 |
| MABS 2006-HE2 | M2 | $ 4,900,000 | February 12, 2010 |
| MLMI 2006-WMC2 | M1 | $ 10,000,000 | May 12, 2009 |
| SARM 2006-9 | B1II | $ 8,367,000 | June 23, 2010 |
| SASC 2006-NC1 | M2 | $ 12,000,000 | February 12, 2010 |
| SASC 2006-WF2 | M6 | $ 4,000,000 | February 12, 2010 |
| SASC 2006-WF3 | M6 | $ 2,000,000 | June 23, 2010 |
| SASC 2007-EQ1 | M2 | $ 2,000,000 | May 12, 2009 |
|  | M3 | $ 1,500,000 | May 12, 2009 |
| SASC 2007-WF1 | M3 | $ 1,567,000 | May 12, 2009 |
| WAMU 2007-OA2 | B3 | $ 2,023,000 | May 6, 2010 |
|  | B4 | $ 4,719,000 | May 6, 2010 |

8.     Defendant U.S. Bank is a national banking association organized and existing under the laws of the United States with its principal place of business in Minnesota.  U.S. Bank is a

market leader in the RMBS trustee business, serving as trustee for thousands of RMBS trusts, including the Covered Trusts.  U.S. Bank has served as the trustee for 18 of the 21 Covered Trusts since those Covered Trusts' closing.  As to the remaining three Covered Trusts, U.S. Bank succeeded Bank of America N.A. ("Bank of America") as trustee in 2009 and 2011, respectively, and has served as trustee for those Covered Trusts continuously since.  These three Covered Trusts are listed below, with the date that U.S. Bank became trustee:

| Covered Trust | Date U.S. Bank Became Trustee |
|---|---|
| LXS 2006-15 | September 2009 |
| MLMI 2006-WMC2 | March 2009 |
| WAMU 2007-OA2 | January 2011 |

## FACTUAL ALLEGATIONS

9.      RPI is the plaintiff in the Litigation currently proceeding against U.S. Bank.  In that case, RPI alleges that U.S. Bank failed to fulfill its duties as trustee of the Covered Trusts and thereby damaged RPI and the class of RMBS certificateholders.  The operative complaint in the Litigation (the "Complaint") is found at Dkt. No. 2 of the Litigation and incorporated by reference herein.  RPI has also filed a supplemental complaint ("Supplement") (Dkt. No. 242), which alleges that U.S. Bank failed to fulfil its contractual obligations to certificateholders by failing to pursue claims on behalf of Covered Trusts impacted by the Lehman Brothers bankruptcy.[2]

10.      In the Complaint, RPI alleges breach of contract and breach of trust causes of action against U.S. Bank.  RPI alleges that, although required by the Governing Agreements and its common-law duties as trustee, U.S. Bank willfully ignored and failed to effectuate the repurchase of

---

[2]      All ¶__ or ¶¶__ references are to the Complaint filed in the Litigation. Any references to the Supplement are cited expressly.

mortgage loans in the Covered Trusts that had breached the representations and warranties from the originators, warrantors and/or sellers ("Warrantors"), despite receiving extensive notification and possessing actual knowledge of specific breaches, and possessing knowledge from numerous sources of pervasive substandard underwriting and outright fraud in the origination of those loans.  U.S. Bank took virtually no action to protect the investors because its primary concern was preserving its lucrative business interests with the deal parties responsible for making the repurchases.

11.     In addition, RPI alleges U.S. Bank discovered and knew of numerous loan servicer events of default ("Events of Default") committed by the loan Servicers or Master Servicers (collectively "Servicers") under the Governing Agreements, but failed to give notice and cure those Events of Default.  U.S. Bank also willfully failed to discharge its fiduciary duty to protect certificateholders' interests following Events of Default, once again electing to place its own financial self-interest ahead of the interests of certificateholders.

12.     The Complaint also alleges that U.S. Bank acted negligently and engaged in willful malfeasance in connection with the conduct referenced above.  *See* ¶¶298, 300, 302, 304, 305, 325.

13.     For example, the Complaint catalogs a series of lawsuits regarding specific loans in specific Covered Trusts that informed U.S. Bank that there were numerous defective mortgage loans in the Covered Trusts that breached the Warrantors' representations and warranties.  ¶¶94-101, 103-104.  Moreover, U.S. Bank had visibility into the breaches of representations and warranties, such as misstated income or debt ratios, learned through the bankruptcies of the mortgage loan borrowers and through the due diligence of its own affiliates.  ¶¶153-173, 178-180.

14.     U.S. Bank discovered rampant failures by the Master Servicer and Servicers to service the loans in conformance with the customary and usual standards of loan servicing practice, which constituted numerous Events of Default under the Governing Agreements.  As early as

- 6 -

September 2008, for example, U.S. Bank learned that one of the Servicers of the Covered Trusts, EMC, was charged by the Federal Trade Commission with violating the FTC Act, the Fair Debt Collection Practices Act, the Fair Credit Reporting Act, and the Truth in Lending Act's Regulation Z, again all Events of Default under the Governing Agreements. ¶185.  In addition, the Servicers botched numerous foreclosure actions due to gross errors, blatant misrepresentations or criminal conduct.  Courts noted that U.S. Bank was even acquiescing in or actively participating in this misconduct, ¶193, yet U.S. Bank did not take action to protect the certificateholders as it was required to do under the prudent-person standard, a duty of care akin to that of a fiduciary.

15.     In defending itself against the Litigation, U.S. Bank has spent and continues to spend an enormous amount on legal expenses, which has been paid from the assets of the Covered Trusts – the investors' money.  As of the filing of this complaint, U.S. Bank has filed an Answer to the Complaint, opposed RPI's motion for class certification, engaged in a "scorched earth" defense strategy, and filed unmeritorious motions for sanctions against RPI.  It has undertaken wholly irrelevant and wasteful discovery, including harassing plaintiff with 117 individual requests for production, many of which are irrelevant or duplicative, serving approximately 110 requests for admission, in blatant violation of Pilot Project rules, and taking irrelevant or duplicative fact and expert depositions, again using investors' money.

16.     U.S. Bank and its counsel have consistently incurred unreasonable expenses in defending U.S. Bank in the Litigation.  For example, U.S. Bank has insisted on taking depositions of numerous witnesses with little or no knowledge of information relevant to the Litigation, despite having access to the testimony of those witnesses regarding nearly identical issues in similar matters and/or being informed on multiple occasions by RPI's counsel and through sworn affidavits that those individuals had little or no relevant knowledge.

- 7 -

17.     Despite the excessive legal expenses racked up in the Litigation, U.S. Bank has not paid or advanced *any* of its own legal costs and attorney fees, nor has it sought to control its litigation expenses.  One might wonder why a litigant would engage in such excessive, expensive and unnecessary litigation tactics.  During the course of discovery in the Litigation, the reason became clear – in early 2017, RPI became suspicious that U.S. Bank may have been billing the costs of defending the Litigation to the Covered Trusts.  On February 23, 2017, RPI alerted U.S. Bank of these suspicions and demanded that it provide invoices detailing any costs it was billing the Covered Trusts.  In a March 3, 2017 letter to RPI's counsel, U.S. Bank confirmed that it has been improperly "indemnified" for its defense from funds belonging to the Covered Trusts.  This means that, through the Covered Trusts' beneficial ownership structure, RPI and the Class have been paying for U.S. Bank's defense in the Litigation even though U.S. Bank's alleged negligence, willful conduct and bad faith is the cause of the Litigation, a perverse result specifically forbidden under the Governing Agreements and the law.  The investors have been damaged by U.S. Bank's wrongdoing in the Litigation and U.S. Bank avoids responsibility for such wrongdoing by defending such misconduct with the funds of the investors it wronged.

18.     Because the certificateholders are the sole beneficiaries of the Covered Trusts, U.S. Bank's improper use of the Covered Trusts' funds reduces the amount of money that the certificateholders are entitled to receive as part of their beneficial ownership of the certificates.  Certificateholders have a beneficial interest in the interest and principal payments derived from the mortgage loans that serve as the corpus for each Covered Trust.  However, before the certificateholders receive their monthly remittances, the trustee (and certain other deal parties) to the Governing Agreements may withdraw funds from the Covered Trusts' assets to pay for the costs of administering the trust or servicing the loans.

- 8 -

19.     While the certificateholders are not a party to the Governing Agreements, the Governing Agreements require U.S. Bank to administer the Covered Trusts for the sole benefit of the certificateholders.  *See, e.g.*, Ex. B, an exemplar copy of one of the Governing Agreements, the PSA for the BAFC 2007-C Covered Trust (the "BAFC 2007 PSA"), §2.01(a).  Thus, as the only intended beneficiaries of the Covered Trusts, they are directly damaged whenever assets or funds are wrongly siphoned from the Covered Trusts' assets.  Accordingly, it is the certificateholders themselves that are funding the defense of U.S. Bank, the party that wronged them, in the Litigation.

**The Governing Agreements**

20.     The obligations, duties and rights of U.S. Bank as trustee for the Covered Trusts are expressly delineated in the Covered Trusts' Governing Agreements, known as Pooling and Servicing Agreements, or PSAs, and documents related thereto.  All of the Governing Agreements for the Covered Trusts are substantially similar and are incorporated herein by reference.  *See, e.g.*, Ex. B, BAFC 2007 PSA.

21.     Twenty of the 21 Covered Trusts' Governing Agreements are governed by New York state law.  The WAMU 2007-OA2 trust is governed by Delaware state law.

22.     The purpose of having trustees, such as U.S. Bank, for the Covered Trusts is to ensure that there is at least one independent party to the Governing Agreements that – unlike plaintiff and the Class – does not face collective action, informational, or other limitations, thereby allowing and requiring the trustee to protect the interests of plaintiff and the Class and administer the Covered Trusts for their benefit.

23.     The corpus of the Covered Trusts, or the "Trust Fund," contains all the assets of the trust, including the mortgage loans and the mortgage loan interest and principal payments prior to remittance to the certificateholders.  Prior to remittance, parties to the Governing Agreements, such

- 9 -

as the trustee, or the Servicer can take specific permitted withdrawals from the Trust Fund prior to the funds being sent to certificateholders.  These permitted withdrawals are outlined in the Governing Agreements.  One such permitted withdrawal is the trustee fee U.S. Bank is paid for its services as trustee.  U.S. Bank can also incur extraordinary expenses for certain activities it undertakes for the benefit of the Covered Trusts that fall outside of the regular duties and routine administration of the Covered Trusts contemplated by the Governing Agreements.  The Governing Agreements do not give U.S. Bank unfettered discretion to use trust assets carte blanche.

24.     While the Governing Agreements contain a number of provisions governing the indemnification of legal fees and costs related to the discharge of U.S. Bank's mandated obligations under the Governing Agreements, there are some significant restrictions on U.S. Bank's ability to use the Covered Trusts' funds.  Absent from these provisions is any unequivocal language explicitly indemnifying lawsuits between indemnitor and indemnitee, parties to the Governing Agreements or beneficiaries themselves to be enforced under New York contract law.  In all relevant respects, the certificateholders' Litigation is functionally equivalent to a first-party lawsuit for purposes of applying the indemnification provisions.  Accordingly, in the Litigation, the purported indemnitors (the certificateholders) are suing the indemnitee (U.S. Bank) and indemnification is prohibited by New York and Delaware law.

25.     The provisions of the Covered Trusts' Governing Agreements addressing U.S. Bank's ability to seek indemnification for expenses are set forth in Exhibit A.  The provisions are nearly identical in substance and in prohibiting the trustee from using the Covered Trusts' funds to indemnify expenses that are incurred as a result of the trustee's willful misfeasance, bad faith or gross negligence in the performance of its duties.  *See id.*

1304564_1

26.     Notwithstanding the fact that the Governing Agreements expressly and explicitly prohibit U.S. Bank from using the Covered Trusts' assets to indemnify itself against claims resulting from its own willful misfeasance, bad faith or gross negligence, as is alleged and being proven through discovery in the Litigation, U.S. Bank has, in violation of the Governing Agreements, used the Covered Trusts' assets to finance its defense in the Litigation.  In short, U.S. Bank is improperly and illegally using the money of the certificateholders it has previously harmed by failing to discharge its duties under the Governing Agreements to prevent those certificateholders' from obtaining compensation for that same misconduct.  U.S. Bank's actions are improper, inequitable and in violation of the Governing Agreements.

27.     In the Litigation, RPI alleges that "U.S. Bank's failures to act, and its breaches and violations alleged herein, were ***grossly negligent and were willful malfeasance***."  ¶298; *see also* ¶¶300, 302, 304, 305, 325.  Moreover, the federal government's 2011 "Interagency Review of Foreclosure Policies and Practices" cited by RPI as the factual basis for its claims found that U.S. Bank engaged in the same misconduct as the Master Servicers and Servicers to the Covered Trusts. ¶¶232-243.

28.     Further demonstrating U.S. Bank's gross negligence and/or intentional misconduct in eschewing its duties to certificateholders, on February 22, 2017, the Honorable Coleen McMahon of this District affirmed that ***U.S. Bank had "'effectively abandoned'" and "'walked away from'" hundreds of thousands of claims against the estate of Lehman Brothers Holdings*** for Lehman's representation and warranty failures as RMBS Warrantors. Supplement, ¶¶8-14.  The bankruptcy claims abandoned by U.S. Bank concerned ***60% of the one million mortgage loans*** that U.S. Bank initially claimed in 2009 as subject to repurchase. Supplement, ¶12.

- 11 -

29.     The Governing Agreements provide that no provision of the relevant Agreement shall be construed to relieve the trustee from liability for its own grossly negligent action, its own grossly negligent failure to act or its own willful misfeasance.  *See* Ex. C.

30.     In addition, under New York law, it is well settled that parties are responsible for their own legal fees and expenses.  Therefore, where, as in the Litigation, the dispute is between or among parties to an agreement, indemnification for legal fees and expenses is not permitted unless expressly stated in the contract.  The Governing Agreements do not authorize indemnification for legal expenses or costs in internecine disputes between the parties to the Governing Agreements, including the Litigation.

31.     U.S. Bank has asserted that the Governing Agreements entitle it to indemnification, as a general matter, from certificateholders.  However, where U.S. Bank is taking the Covered Trusts' funds to defend itself against allegations that it willfully, negligently and/or in bad faith failed to perform the duties mandated by the Governing Agreements, the Governing Agreements expressly forbid U.S. Bank's financing of its defense with the Covered Trusts' funds.  *See, e.g.*, Ex. C.

32.     Moreover, the Governing Agreements do not contain provisions providing for an advancement of U.S. Bank's legal fees and costs.  U.S. Bank may only receive indemnification and subsequent reimbursement of those fees and costs which are permitted, and only if it can establish that the fees and costs are expressly permitted – which here, they are not.  *See* Ex. A.  Given that the Governing Agreements: (a) do not allow U.S. Bank to seek advancement or indemnification from the Covered Trusts for legal expenses incurred due to the conduct alleged in the Litigation; (b) prohibit indemnification for expenses incurred as a result of its bad faith and negligent or willful misconduct; and (c) limit indemnification to only reasonable expenses, the Governing Agreements

- 12 -

do not permit advancement or indemnification for any or all of the legal fees and costs incurred in relation to the Litigation.

33.     Furthermore, because the Governing Agreements do not provide for U.S. Bank's indemnification in these circumstances, under trust law, U.S. Bank is not permitted to seek indemnification for expenses not incurred for the benefit of the Covered Trusts.  As the benefit provided by the legal fees and costs incurred in the Litigation only benefits U.S. Bank, none of its expenses can be billed to the Covered Trusts.

34.     Just as U.S. Bank's indemnification for any costs associated with the Litigation is improper, so would indemnification for its costs in defending this action be improper.  This action is another lawsuit for which the Governing Agreements do not unequivocally provide for indemnification of U.S. Bank's costs or expenses, and so, to the extent that U.S. Bank bills the Covered Trusts for the costs of defending its misconduct, it will be in violation of the Governing Agreements.  Just as in the Litigation, this lawsuit arises from U.S. Bank's willful misconduct, bad faith or negligence in the performance of duties under the Governing Agreements.  Therefore, any indemnification that U.S. Bank seeks from the Covered Trusts for defending this action is unlawful and should be paid back to the Covered Trusts.

## CLASS ACTION ALLEGATIONS

35.     Plaintiff brings this action as a class action on behalf of a Class consisting of all current and former investors who held RMBS certificates in the Covered Trusts during the time when U.S. Bank improperly paid for its legal fees and costs in the Litigation from the Covered Trusts' assets and were damaged as a result (the "Class").  Excluded from the Class are U.S. Bank, the loan originators, the Warrantors, the Master Servicers and the Servicers of the Covered Trusts,

and their officers and directors, their legal representatives, successors or assigns, and any entity in which they have or had a controlling interest.

36.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained though appropriate discovery, plaintiff believes that there are at least hundreds of members of the proposed Class.  Record owners and other members of the Class may be identified from records maintained by U.S. Bank, The Depository Trust Company or others and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

37.     Plaintiff's claims are typical of the claims of the members of the Class, as they all acquired RMBS certificates in the Covered Trusts and held the RMBS certificates during the time when U.S. Bank began impermissibly billing the Covered Trusts for its Litigation fees and costs; all the claims are based upon the Governing Agreements substantially in the same form as the BAFC 2007-C PSA; U.S. Bank's alleged misconduct was substantially the same with respect to all Class members; and all Class members suffered similar harm as a result.  Thus, all members of the Class are similarly affected by U.S. Bank's contractual breaches and common law violations that are alleged herein.

38.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action and RMBS litigation.

39.     U.S. Bank has acted in a manner that applies generally to the Class because each Class member is impacted through any improper charge to the Covered Trusts' assets.  Accordingly, declaratory or injunctive relief will apply to the Class as a whole.

40.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether U.S. Bank is contractually permitted under the Governing Agreements to receive indemnification of any of its legal fees and costs from the Covered Trusts incurred in relation to the Litigation;

(b)     whether U.S. Bank must seek indemnification from the Warrantors and/or Servicers for legal fees and costs incurred in relation to the Litigation;

(c)     whether U.S. Bank is permitted to obtain indemnification of legal fees and costs incurred in relation to the Litigation because of willful misconduct, bad faith or negligence in the performance of any of the its duties;

(d)     whether U.S. Bank's legal fees and costs incurred in relation to the Litigation were unreasonable;

(e)     whether U.S. Bank, as trustee, was permitted to bill the Covered Trusts for the Litigation expenses as a principle of trust law;

(f)     whether U.S. Bank's conduct in obtaining its legal fees and costs out of the Covered Trusts' assets is tortious or inequitable; and

(g)     whether U.S. Bank is entitled to the advancement of its legal fees and costs incurred in relation to the Litigation.

41.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all Class members is impracticable.  There will be no difficulty in the management of this action as a class action.

- 15 -

## COUNT I

### Breach of Contract

42.     Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

43.     As set forth in detail above, the Governing Agreements are contracts setting forth the duties U.S. Bank owed to plaintiff, the Class and the Covered Trusts, along with the conditions and limitations governing U.S. Bank's right to indemnification or use of Covered Trust funds.  U.S. Bank took actions not permitted by the Governing Agreements or by New York law, including, without limitation:

(a)     using the Covered Trusts' funds for legal fees and costs U.S. Bank incurred in defending the Litigation because the Governing Agreements and New York law do not permit indemnification of first-party claims or those between indemnitor and indemnitee;

(b)     using the Covered Trusts' funds for legal fees and costs incurred in defending against allegations of negligence, bad faith and willful misconduct in the Litigation because the Governing Agreements and New York law prohibit the use of the Covered Trusts' funds for such purposes;

(c)     using the Covered Trusts' funds for unreasonable legal fees and costs incurred in defending itself in the Litigation; and

(d)     obtaining advancement of its legal fees and costs from the Covered Trusts incurred in relation to the Litigation.

44.     As alleged herein, U.S. Bank took actions not permitted by the Governing Agreements and therefore breached the Governing Agreements.  U.S. Bank's contractual breaches deprived plaintiff, the Class and the Covered Trusts of the consideration they bargained for, *i.e.*, they

- 16 -

did not obtain RMBS certificates with a trustee that complied with its obligations under the Governing Agreements and could be relied on to properly bill its legal expenses.  These breaches of the Governing Agreements by U.S. Bank caused plaintiff, the Class and the Covered Trusts to suffer damages caused by the improperly billed legal expenses.

45.     Plaintiff and the Class did not receive the benefit of their bargain under the Governing Agreements when U.S. Bank took actions that resulted in the payment of legal fees and costs from the Covered Trusts incurred in defending against allegations of bad faith and willful or negligent misconduct.

46.     Furthermore, plaintiff and the Class did not receive the benefit of their bargain under the Governing Agreements when U.S. Bank took actions that resulted in it receiving an advancement of legal fees and costs from the Covered Trusts incurred in relation to the Litigation.

47.     Finally, plaintiff and the Class did not receive the benefit of their bargain under the Governing Agreements when U.S. Bank billed unreasonable legal fees and costs to the Covered Trusts.

48.     As a result of U.S. Bank's multiple breaches of the Governing Agreements alleged herein, U.S. Bank is liable to plaintiff, the Class and the Covered Trusts for the damages they suffered as a direct result of U.S. Bank's actions alleged herein in contravention of the Governing Agreements.

49.     In addition, U.S. Bank has engaged in multiple, new and additional breaches of the Governing Agreements by continuing to take further actions as alleged herein, in both the Litigation and this action, and will cause plaintiff, the Class and the Covered Trusts to suffer additional damages.

- 17 -

## COUNT II

### Unjust Enrichment

50.     Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

51.     U.S. Bank has received a specific benefit from its use of the Covered Trusts' funds for legal fees and costs at the expense of plaintiff and the Class.

52.     As trustee, U.S. Bank had a fiduciary relationship to plaintiff, the Class and the Covered Trusts, and U.S. Bank was aware of that relationship.

53.     In light of the egregious use of the Covered Trusts' funds to finance the defense of the Litigation, restitution is necessary because equity and good conscience cannot permit U.S. Bank to retain the legal fees and costs.

## COUNT III

### Conversion

54.     Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

55.     As described above, U.S. Bank's administration of the Covered Trusts and the funds therein must only be for the benefit of the certificateholders unless provided for by the Governing Agreements.

56.     By using the Covered Trusts' funds for unlawful and unreasonable legal fees and costs, U.S. Bank has wrongfully converted the Covered Trusts' funds belonging to plaintiff and the Class.

57.     As a direct and proximate result of U.S. Bank's wrongful taking and interference of the Covered Trusts' funds, plaintiff and the Class have sustained damages and losses equal to the specific and identifiable amount of legal fees and costs misappropriated by U.S. Bank.

- 18 -

58.     At no point did plaintiff or Class members consent to U.S. Bank's use of the Covered Trusts' funds for defending itself in the Litigation.

59.     U.S. Bank's conduct was gross, willful and wanton, and at the least was undertaken with reckless disregard of plaintiff's rights, and therefore warrants the imposition of punitive damages.

**COUNT IV**

**Breach of Trust**

60.     Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

61.     Under the common law, U.S. Bank had a duty to plaintiff and the Class to only seek indemnification of permitted legal fees and costs incurred for the benefit of the Covered Trusts.

62.     As a result of U.S. Bank's actions in relation to allegations in the Litigation, U.S. Bank is not entitled to indemnity.

63.     U.S. Bank breached its duty of trust owed to plaintiff and the Class by advancing its own interests at the expense of plaintiff and the Class, because it is being sued in the Litigation in its capacity as trustee for failing to protect the interests of plaintiff and the Class but billing the Covered Trusts for its defense.  Accordingly, the legal fees and expenses incurred in defending itself in the Litigation are for the exclusive benefit of U.S. Bank and not for the benefit of the Covered Trusts.

64.     In addition, U.S. Bank breached its duty of trust owed to plaintiff and the Class by seeking unreasonable legal fees and expenses from the Covered Trusts' assets.

65.     Furthermore, U.S. Bank has continued to bill the Covered Trusts as alleged above and thus has continued to fail to fulfill its duty of trust, and has thereby engaged in numerous, continuing additional breaches of its duty of trust to the present time, in both the Litigation and this action.

- 19 -

66.     As a result of U.S. Bank's breach of its duty of trust, unpermitted legal fees and costs were billed to and paid from the Covered Trusts' assets, causing the plaintiff and Class damages.

67.     U.S. Bank's conduct was gross, willful and wanton, and at the least was undertaken with reckless disregard of plaintiff's rights, and therefore warrants the imposition of punitive damages.

## COUNT V

### Equitable Accounting

68.     Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

69.     As an RMBS trustee, U.S. Bank had, and continues to have, a fiduciary relationship with and duty to certificateholders regarding the assets of the Covered Trusts in which certificateholders have a beneficial interest.

70.     The funds held in the Covered Trusts are entrusted to U.S. Bank's administration and oversight.

71.     U.S. Bank's fiduciary duty and control of entrusted funds impose a burden of accounting.

72.     Plaintiff and the Class require an accounting of the legal fees and costs paid for using the Covered Trusts' assets to determine the amount improperly taken.

73.     U.S. Bank has declined to provide such an accounting upon plaintiff's request.

## COUNT VI

### Declaratory Judgment Regarding U.S. Bank's Right to Indemnification from the Covered Trusts for Legal Fees and Costs Incurred in Defending the Litigation

74.     Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

- 20 -

1304564_1

75.     A valid and justiciable controversy exists between plaintiff and U.S. Bank regarding U.S. Bank's right to indemnification from the Covered Trusts for legal fees and costs U.S. Bank incurred in defending the Litigation.  Plaintiff contends, and U.S. Bank denies, that U.S. Bank is not entitled to indemnification from the Covered Trusts for any loss, liability or expense associated with the Litigation, because the Governing Agreements and New York law prohibit:

(a)     indemnification of first-party claims or those between indemnitor and indemnitee;

(b)     the use of the Covered Trusts' funds for legal fees and costs incurred in defending against allegations of negligence, bad faith and willful misconduct;

(c)     using the Covered Trusts' funds for the unreasonable legal fees and costs incurred in defending itself in the Litigation; and

(d)     obtaining advancement of U.S. Bank's legal fees and costs from the Covered Trusts incurred in relation to the Litigation.

76.     Plaintiff seeks a declaration that U.S. Bank is not permitted indemnification from the Covered Trusts for any loss, liability or expense associated with the Litigation and that U.S. Bank is not entitled to draw against the Covered Trusts for the purpose of advancing its attorneys' fees and expenses associated with the Litigation.  The requested declaratory judgment will serve a useful purpose in clarifying and settling the legal issue regarding whether U.S. Bank is entitled to indemnity from the Covered Trusts against any loss, liability or expense associated with the Litigation.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for relief and judgment as follows:

A.      Determining that this action is a proper class action, certifying plaintiff as a Class representative under Rule 23 of the Federal Rules of Civil Procedure, and appointing the undersigned as Class counsel;

B.      Compelling U.S. Bank to provide an accounting of the legal fees and costs it has sought and/or received from the Covered Trusts in defending itself in the Litigation and this action;

C.      Providing declaratory relief in favor of plaintiff and the Class to establish that U.S. Bank is prohibited from advancement and reimbursement of fees and costs incurred in relation to the Litigation and this action from the Covered Trusts;

D.      Issuing a preliminary and permanent injunction enjoining the indemnification of U.S. Bank or the further advancement of funds from the Covered Trusts' assets for U.S. Bank's legal fees and costs incurred in the Litigation and this action;

E.      Awarding damages and/or equitable relief in favor of plaintiff, the Class and the Covered Trusts against U.S. Bank for breaches of its contractual and common law duties alleged in the Litigation and this action, including interest thereon;

F.      Disgorging any benefits or profits received as a result of U.S. Bank's breach of its duty of loyalty to avoid unjust enrichment;

G.      Awarding punitive damages to plaintiff, the Class and the Covered Trusts against U.S. Bank related to the claims of conversion and breach of trust;

H.      Awarding plaintiff, the Class and the Covered Trusts their reasonable costs and expenses incurred in this action, including counsel and expert fees; and

I.      Such other relief as the Court may deem just and proper.

1304564_1

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

DATED:  September 6, 2017
ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN


_s/ Samuel H. Rudman_
SAMUEL H. RUDMAN

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
ARTHUR C. LEAHY
STEVEN W. PEPICH
LUCAS F. OLTS
DARRYL J. ALVARADO
HILLARY B. STAKEM
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)
artl@rgrdlaw.com
stevep@rgrdlaw.com
lolts@rgrdlaw.com
dalvarado@rgrdlaw.com
hstakem@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
CHRISTOPHER M. WOOD
414 Union Street, Suite 900
Nashville, TN  37219
Telephone:  615/244-2203
615/252-3798 (fax)
cwood@rgrdlaw.com

Attorneys for Plaintiff

- 23 -